541 So.2d 680 (1989)
Jimmy Lee PHILPOT, Appellant,
v.
CITY OF MIAMI, Appellee.
No. 88-1222.
District Court of Appeal of Florida, First District.
March 16, 1989.
Rehearing Denied April 26, 1989.
*681 Emil Jaczynski, Fort Lauderdale, for appellant.
Martha D. Fornaris, Jay M. Levy, of Hershoff, Levy & Swartz, Miami, for appellee.
JOANOS, Judge.
This is an appeal from a workers' compensation order denying a claim for medical treatment and compensation benefits. Claimant alleges error in the deputy commissioner's failure to consider uncontroverted medical testimony, misapprehension of the medical evidence, and failure to make adequate findings of fact. We reverse and remand with directions.
Claimant was injured on August 9, 1984, as he operated a tractor-mower on a highway right-of-way. An exit sign fell on him, injuring his head and the left side of his body. Claimant attempted to return to work at the city nursery on December 3, 1984. However, he suffered a second head injury when he became dizzy, stumbled to his hands and knees, and fell, striking his head first on the desk, and then on the concrete floor. He was rendered unconscious for approximately thirty minutes, treated at the emergency room, and told to seek follow-up care with his own physician.
Claimant did not return to work again until January 1986, when he was then assigned to a sod crew. He was still experiencing dizzy spells, and was walking with the aid of a cane. He was unable to do the assigned work, and sat in a truck most of the day. Claimant has not worked at all since January 1986. He testified that he has continued to experience dizziness when he walks, and this dizziness is accompanied by spells of nausea. Claimant testified he has been unable to look for work, and spends most of his time in bed. In addition to the dizziness, since the accident claimant has had pain in the top of his head, and in his neck, left shoulder, left knee, back, and tail bone.
Over objection, the City's claim adjuster testified that the City stopped compensation payments on January 20, 1986, because it received reports from various doctors that claimant was released to return to work without any impairment. Claimant's attorney objected to these reports on hearsay grounds, the deputy sustained the objection, and the reports were not received in evidence. The doctors who prepared the reports were not produced as witnesses, nor had they been deposed.
Therefore, the depositions of Dr. Ryon and Dr. Gilbert constitute the only medical evidence in the record. Dr. Ryon is a general practitioner who specializes in industrial medicine. He first saw claimant on September 19, 1984, and continued to see him a number of times after that.[1] Dr. Ryon's examination revealed no objective findings that could not be attributed to subjective reasons. Although he could find nothing specific to account for claimant's continuing problems, he concluded that claimant was injured, and that his life has been seriously disrupted. In Dr. Ryon's opinion, claimant is not a malingerer, and he has, at *682 a minimum, a fifteen percent impairment attributable to the accident of August 9, 1984. Dr. Ryon said he was unfamiliar with the latest edition of the American Medical Association Guides to Permanent Impairment (AMA Guides); consequently, he could not state with certainty that the fifteen percent impairment was consistent with the Guides.
Dr. Ryon referred claimant to Dr. Gilbert, who specializes in psychiatry and neurology. Dr. Gilbert saw claimant on two occasions, first on December 26, 1986, and then on January 12, 1987. He diagnosed claimant as suffering from a somatization disorder, i.e., a neurotic condition manifested by multiple physical complaints which have lasted over a significant period of time and have no real physical basis. Dr. Gilbert said claimant does in fact feel the pain that he complains of, and that his condition is a consequence of the August 1984 accident. Dr. Gilbert's report indicates that claimant has a twenty percent permanent partial disability due to his psychiatric condition. When asked whether claimant has a permanent disability within the AMA Guides, Dr. Gilbert explained that since claimant has not received treatment, the clinical situation did not conform with the statutory requirement that, where applicable, an impairment rating should be determined in accordance with the AMA Guides. § 440.15(3)(a)3, Fla. Stat. (1983). In other words, because claimant has not been treated for his psychiatric disorder, theoretically he has not reached maximum improvement. Yet, in Dr. Gilbert's opinion, absent treatment, from a practical point of view, claimant has reached maximum psychiatric improvement with a twenty percent permanent disability.
The deputy commissioner denied all benefits, finding that claimant had been offered his former job and had resigned voluntarily. The deputy further found that claimant lacks credibility, and could have returned to work, had he been so inclined. The deputy expressly rejected claimant's testimony insofar as it conflicted with the testimony of the City's claim adjuster, and rejected the testimony of Dr. Ryon and Dr. Gilbert because it was based on the history given by claimant. The deputy accepted the claim adjuster's testimony that the authorized treating physicians had advised that claimant could return to work and had assigned him no impairment. This testimony was predicated on the excluded reports.
Generally, an award of temporary partial disability or temporary total disability benefits requires medical evidence of the claimant's inability to work, or evidence of a good faith work search. Area Electric Service, Inc. v. Cunningham, 538 So.2d 471 (Fla. 1st DCA 1989); Southern Bell Telephone & Telegraph Co. v. Williams, 512 So.2d 243 (Fla. 1st DCA 1987); Mt. Sinai Medical Center v. Jacobs, 492 So.2d 1143 (Fla. 1st DCA 1986); Vantage Pointe v. Sowers, 463 So.2d 396 (Fla. 1st DCA 1985). On the other hand, if the circumstances of a particular case indicate that a work search would be a futile gesture, such search may be excused as a predicate for disability benefits. Bill's Equipment and Rentals v. Teel, 498 So.2d 536 (Fla. 1st DCA 1986); Fairchild Industries, Inc. v. Sievers, 447 So.2d 393 (Fla. 1st DCA 1984).
Furthermore, where, as in the instant case, a post-traumatic neurosis may contribute to or be the cause of disability, the neurosis is compensable only if there has been an actual physical injury, and the neurosis is the direct and immediate result of the industrial injury. Superior Mill Work v. Gabel, 89 So.2d 794 (Fla. 1956); Greater Miami Academy v. Blum, 466 So.2d 1263 (Fla. 1st DCA), petition for review denied, 476 So.2d 672 (Fla. 1985). Insofar as the injury at issue is covered by the AMA Guides, an impairment rating should be based on the Guides. However, where the Guides do not adequately address the subject impairment, the deputy may rely on "a physician's qualified expert opinion, which utilizes experience in treating a claimant, and ... such opinion will suffice without reliance on a medical manual or guide." Wilson v. Harris Corporation, 14 F.L.W. 434, 435 (Fla. 1st DCA Feb. 15, 1989); Shop & Go, Inc. v. Hart, 537 So.2d 667 (Fla. 1st DCA 1989), quoting Patterson v. Wellcraft Marine, 509 So.2d 1195, *683 1197 (Fla. 1st DCA 1987). See also Dayron Corp. v. Morehead, 509 So.2d 930 (Fla. 1987); United General Construction v. Cason, 479 So.2d 833 (Fla. 1st DCA 1985); Martin County School Board v. McDaniel, 465 So.2d 1235 (Fla. 1st DCA 1984), appeal dismissed, 478 So.2d 54 (Fla. 1985).
Although as a rule, a deputy need not explain why he accepts one physician's testimony over that of another, an exception to the rule applies where (1) the reason for the finding is not apparent from the record, or (2) it appears the deputy overlooked or ignored evidence in the record. Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983). Moreover, a deputy may not reject uncontroverted medical testimony without a reasonable explanation therefor. For example, in Andrews v. C.B.S. Division, Maule Industries, 118 So.2d 206 (Fla. 1960), the court instructed:
[T]he law does not permit the deputy commissioner to select the medical testimony of the witness he wishes to believe and reject the others without some logical reason for doing so ... . the reviewing tribunal cannot determine the correctness of the conclusions of the deputy commissioner unless he makes proper findings and explains his reasons for rejecting or accepting the testimony of one medical expert over that of another.
118 So.2d at 212. The court further instructed that while such findings might be burdensome, often they are the foundation upon which substantial rights are granted or denied, therefore they "should not be vague, speculative, or inconclusive." Id. See also Giaramita v. Dade County School Board, 484 So.2d 1312 (Fla. 1st DCA 1986).
By the same token, the deputy may not reject a claimant's testimony with the bare statement that it is not credible, when there is no support in the record for such a determination, and no adequate explanation provided for the finding. Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987). In Calleyro, the court recognized the superior position of the deputy to assess the credibility of a witness's testimony, due to his direct observation of the witness during that testimony. Nevertheless, the court found the deputy's observation of the claimant's demeanor was an insufficient basis for rejection of claimant's testimony, since there was nothing in the record to support the finding that the claimant lacked credibility.
Claimant in this case presented unrefuted evidence of two unsuccessful attempts to return to work. The first occurred in December 1984, at which time he succumbed to dizziness and fell, sustaining a second head injury which rendered him unconscious and required emergency medical care. Claimant's second return to work in January 1986 proved unsuccessful, due to his physical inability to do the assigned work.
Claimant also presented unrefuted testimony that his recurrent dizzy spells rendered him unable to perform a work search. The fall at work supports claimant's credibility on this point. Further corroboration is provided by Dr. Gilbert's conclusion that claimant suffered a post-concussion syndrome attributable to the December 3, 1984, fall, which contributes to his present condition.
The medical evidence in this record consists solely of the depositions and narrative reports of Dr. Ryon and Dr. Gilbert. Although the carrier's claim adjuster testified, over objection, that authorized treating physicians released claimant to return to work with no impairment, this testimony constituted unsubstantiated hearsay. A deputy's decision may not be predicated on material that has not been admitted into evidence. Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988). There being no valid evidence to controvert the depositions and narrative reports of Drs. Ryon and Gilbert, we find the deputy erred in rejecting the only medical evidence in the record.
By the same token, we find the deputy improperly rejected claimant's testimony with the bare statement that "claimant lacks credibility." Calleyro. This finding *684 formed the predicate for the deputy's rejection of the medical testimony, because the physicians' opinions had been based on the history given by the claimant. We recognize the deference due the deputy's opportunity to view claimant's demeanor and to evaluate credibility on the basis of personal observation. Nevertheless, the record in this case substantiates, rather than undermines, claimant's credibility. The record reflects that claimant began working for the City in 1973, when he was nineteen years old. He worked his way up from laborer to truck driver, earning $362 a week at the time of his August 1984 accident. Between 1973 and August 1984, claimant suffered two minor work-related injuries, neither of which caused him to miss any appreciable time from work. Thus, there is nothing in claimant's work record with the City to support an inference that he is a malingerer.
In summary, we find that the deputy erred in rejecting claimant's unrefuted, unimpeached testimony, without an adequate explanation, Calleyro v. Mt. Sinai Hospital, 504 So.2d at 1337, and in rejecting unrefuted medical testimony. Giaramita v. Dade County School Board, 484 So.2d at 1314. Furthermore, we find the deputy erred in basing his decision on material which was not made a part of the record. Trujillo v. Southern Wine & Spirits, 525 So.2d at 483.
Accordingly, the order appealed is reversed and remanded with directions to prepare an order explicating sufficient reasons for rejecting the uncontroverted medical testimony, and claimant's unrefuted testimony or grant relief to the claimant. In addition, the deputy should take further evidence to determine whether Dr. Ryon's referral to Dr. Gilbert occurred during the period that Dr. Ryon was authorized to treat claimant. If such proves to be the case, the deputy should order payment of Dr. Gilbert's examination fee.
BOOTH and MINER, JJ., concur.
NOTES
[1] According to the City's claim adjuster, Dr. Ryon was authorized for two months.